### JOHN DAVOCK v. JAMES NEALON.

1. The adverse possessions of successive occupants, between whom a privity of estate exists, can be tacked so as to make a continuous twenty years' adverse possession.
2. Where one encloses and possesses more land than is covered by the description in his deed, and sells to another by the same description, who enters into possession of all the land enclosed, the successive possessions can be tacked.

On rule to show cause why a new trial should not be granted.

Argued at February Term, 1895, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, REED and GUMMERE.

For the rule, *James F. Minturn.*

*Contra, Abel I. Smith.*

The opinion of the court was delivered by

REED, J. This is an action of ejectment brought to recover the possession of a strip of land fronting one foot in width on

Ferry street, and running, one foot in width, back from the street a distance of one hundred. feet. The facts proved at the trial were these:

Davock, the plaintiff, in July, 1873, bought lot No. 17 on a plot.

Nealon, the defendant, now owns the adjoining lot, No. 16.

When Davock bought, a house stood on his lot No. 17, one side of which house, with two fences, formed the practical line of division between the two lots.

One fence ran from Ferry street and was joined to the front corner of the house. The other fence ran from the rear corner of the house, back the depth of the lots. The front fence, the side of the house and the back fence together formed practically a straight line dividing the two lots.

Some time after he had purchased lot 17, Mr. Davock raised the house which stood upon his lot and put a new foundation under it. In doing this he moved the house one foot in on his lot, leaving a space of one foot between the corners to which the ends of the division fence had been attached and the fence ends.

The ends of the two fences, without any change in the location of the fences, were afterwards connected with the two corners.

On April 16th, 1892, Nealon, the defendant, tore down these fences, claiming that the true division line between lots 16 and 17 was one foot over on lot 17 as that lot had been occupied and fenced.

On the trial, Davock did not claim a paper title to this one-foot strip.

The description in the deeds from his predecessors in title for lot 17 stopped short of the one-foot strip. He rested his right to the one-foot strip upon two grounds. He claimed, first, that there had been a practical location of the division line between the two lots, by the mutual location of the fence and by acquiescence in such location by the preceding owners of the respective lots. He claimed, secondly, that he had gained a title by adverse possession.

At the conclusion of the plaintiff's case the trial justice ruled that he had shown nothing from which a jury could find for him upon either ground.

The counsel for the relator rests his application for a new trial upon the ground that there was evidence upon the second point which should have been submitted to the jury.

There seems to be no ground for a question that Davock's possession, from the time he received his deed for lot 17 and went into occupation of the house and its curtilage, was adverse to every other person.

And it is beyond all question that his possession extended to the fence which enclosed the lot. Upon this point the evidence seems clear.

But Davock went into possession in July, 1873, and Nealon terminated Davock's possession of this strip of land in April, 1892, so that his occupation was short of the twenty years required to ripen his possession into a title good against Nealon.

It was mainly upon this failure to show the requisite length of adverse enjoyment by Davock that the trial justice refused to submit this branch of the case to the jury.

It is, however, insisted that there is in the testimony evidence of an adverse possession of the *locus in quo* by Meese, who sold lot 17 to Davock, and that his possession can be tacked to the possession of Davock so as to complete a twenty years' continuous adverse occupation, which will enure to the benefit of Davock.

It appears that Meese bought lot 17 in September, 1867. That when Meese bought, the house and fences were then on lot 17, the house and fences having been put there in 1865 or 1866. There is evidence that Meese lived on lot 17 twenty-five years ago.

There is testimony to the effect that a fence was in the same place as the one torn down by Nealon, while Meese occupied lot 17. While the testimony in respect to Meese's occupation of the premises is not very distinct or definite, still there seems to be enough to support a conclusion by a jury that Meese, from the time he received his deed for lot 17,

occupied the house and used the curtilage enclosed within this fence, in connection with the house. If so, there was evidence from which a jury might conclude that his possession of the strip of land was actual, exclusive, visible, continuous and under claim of right.

But this question remains: Could his possession be tacked to Davock's possession, to make up the period of twenty years?

It is entirely settled that the adverse possessions of independent trespassers cannot be tacked for the purpose of making up the entire period required to bar the holder of the paper title.

And this is so although there are no appreciable intervals between the abandonment of any one possession and the assumption of another; and so the line of successive possessions is practically unbroken and continuous.

The abandonment of possession by each of such trespassers stops the running of the period of limitation, and each entry is a fresh disseisin, from which date the running of the period again begins.

It is equally well settled that if a subsequent trespasser succeeds to the inchoate right of the immediate previous trespasser—that is, if there is a privity of estate between the two—then the successive possessions may be tacked. The entry of the successor will relate to the entry of him whose possessory right he holds. If the successive adverse possessions of those holding in privity with the original disseisor are practically continuous for twenty years, the right to possession becomes absolute.

Thus far, the law is settled by the overwhelming weight of authority. But in respect to the kind of evidence by which this privity between such successive occupants is to be shown, there exists some contrariety of judicial opinion.

In some jurisdictions, the devolutions of possession are regarded as transfers of title to land which can pass only by deed, by will or by descent. *Sawyer* v. *Kendall*, 10 *Cush.* 241; *Ward* v. *Bartholomew*, 6 *Pick.* 408.

In other jurisdictions it is held that, as to third persons against whom the possession is held adversely, if such transfers of possession were in fact made, it is immaterial whether they were effected by deed or devise, or by an agreement either written or verbal. *McNeely* v. *Langan*, 22 *Ohio St.* 33; *Weber* v. *Anderson*, 73 *Ill.* 439; *Menkens* v. *Blumenthal*, 27 *Mo.* 198; *Cunningham* v. *Patton*, 6 *Barr* 357; *Smith* v. *Chapin*, 31 *Conn.* 530.

The question here is not whether a person having a naked possession of a tract of land disconnected from any other land for which he has title, can, by parol, turn over his possession to another, so as to continue the first adverse possession against the legal owner.

The weight of authority is that a parol delivery from one to the other of an actual *pedis possessio* is sufficient. The cases already cited exhibit this. In instances of constructive adverse possession the rule is different. *Simpson* v. *Downing*, 23 *Wend.* 316.

But the question here presented is this: If one holding the legal paper title to a piece of land, in enclosing it includes within the enclosure a piece of adjoining land, enters into possession of the entire enclosed tract and then transfers his legal paper title to another, who goes into possession of the entire enclosed tract, can the two adverse possessions be tacked?

Now, it is perfectly obvious that the deed, followed by possession of the whole tract, is intended to operate as a conveyance of the possession of all within the enclosure.

The legal title passes as to so much of the lot as is within the description in the deed; but the deed, aided by the enclosure and the actual transference of possession of the rest as of a part of the lot sold, is sufficient evidence of a transference of possession to raise the required privity between them.

This has always, I think, been understood to be the rule in this state constantly enforced at *Nisi Prius*.

The judgment is reversed and a *venire de novo* awarded.