******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

JACEK SUPRONOWICZ ET AL. *v.*
MICHAEL EATON ET AL.
(AC 45508)

Elgo, Cradle and Westbrook, Js.

*Syllabus*

The plaintiffs sought to quiet title by adverse possession to certain of the
defendants' property that was adjacent to their own. The plaintiffs
acquired title to their property in 2011 and claimed that they had used
a portion of the defendants' property, which was located between the
plaintiffs' home and a creek set inside of a shallow ravine, in various
ways since that time. The plaintiffs also asserted that their predecessors
in title had used the disputed area continuously from 1961 to 2011. The
disputed area consisted predominantly of a grassy side yard, which the
plaintiffs maintained, and included a small corner of the plaintiffs' paved
driveway. Shortly after purchasing their property, the plaintiffs sought
and received permission from the defendants' predecessor in title to
install drains in the disputed area to divert water from the roof and
foundation of their residence into the creek. The defendants purchased
their property in 2017. Approximately one year later, they had the prop-
erty surveyed and determined that they were the record title holders
of the disputed area. Thereafter, the defendants began to use and main-
tain the disputed area and asked the plaintiffs to stop entering it. The
plaintiffs ignored the defendants' request and continued to use the dis-
puted area until 2019, when the defendants erected a plastic fence along
the border of their property as it was reflected in the survey. The
plaintiffs commenced the underlying action, alleging that they and their
predecessors in title had been in open, exclusive, hostile, adverse and
actual possession under a claim of right of the disputed area for more
than fifteen years, as required by the applicable statute (§ 52-575 (a)).
The defendants filed a counterclaim seeking a declaratory judgment
affirming their ownership of the disputed area and to quiet title. There-
after, the defendants filed a motion for summary judgment, arguing
that the plaintiffs could not demonstrate that the essential elements of
adverse possession had been met. The trial court granted the defendants'
motion, and the plaintiffs appealed to this court. *Held*:
1. The trial court improperly rendered summary judgment for the defendants
because there was a genuine issue of material fact as to whether privity
existed between the plaintiffs and their predecessors in title: the plain-
tiffs were required to demonstrate privity between themselves and their
predecessors in title in order to tack the adverse use of their predeces-
sors to their own use to satisfy the fifteen year period set forth in § 52-
575 (a) and to acquire title to the disputed area because they purchased
their property and began using the disputed area only eight years prior
to the commencement of the action; moreover, although the plaintiffs'
predecessors in title never expressly conveyed the disputed area to the
plaintiffs, there was a genuine issue of material fact as to whether privity
existed between the plaintiffs and their predecessors in title under the
theory of implied conveyance; furthermore, several courts in other juris-
dictions have found an implied transfer of a disputed area on the basis
of the existence of a natural boundary that appeared to enclose the
property, and the disputed area in the present case was bounded by a
ravine and a creek, and the plaintiffs' predecessors in title believed that
the creek was the boundary line of their property and that they owned the
disputed area until they sold their property to the plaintiffs; accordingly,
whether an implied transfer could be inferred from the evidence raised
a question of fact that could not properly be resolved by the trial court
on a motion for summary judgment.
2. The trial court improperly rendered summary judgment for the defendants
because there was a genuine issue of material fact as to whether the
plaintiffs recognized the defendants' superior title to the disputed area:
although it was undisputed that the plaintiffs asked the defendants'
predecessor in title for permission to install drains in the disputed
area shortly after the plaintiffs had purchased their property, there was

conflicting evidence regarding whether the permission sought was for the use of the disputed area or for the resulting increase in water into the creek, which the plaintiffs believed was owned by the defendant's predecessors in title and which marked the then supposed boundary line, and that factual dispute was required to be resolved by the fact finder, not by the trial court at summary judgment.

3. The trial court improperly rendered summary judgment for the defendants because there was a genuine issue of material fact regarding the exclusivity of the plaintiffs' use of the disputed area: there was a genuine issue of material fact as to whether adverse possession had been established prior to the defendants' entry into the disputed area in 2018, as the plaintiffs presented evidence that they and/or their predecessors in title had used the disputed area continuously from 1961 until the defendants erected a fence around it in 2019; moreover, to the extent that the plaintiffs did not establish adverse possession prior to 2018, it was the role of the fact finder to determine whether the plaintiffs' use was sufficient to satisfy the exclusivity requirement needed to establish adverse possession despite the defendants' use of the disputed area beginning in 2018.

Argued November 9, 2023—officially released March 5, 2024

*Procedural History*

Action seeking to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the named defendant et al. filed a counterclaim; thereafter, the court, *Hon. Irene P. Jacobs*, judge trial referee, granted the motion for summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed*; *further proceedings*.

*Ian A. Cole*, for the appellants (plaintiffs).

*Arthur C. Zinn*, for the appellees (named defendant et al.).

*Opinion*

WESTBROOK, J. In this action to quiet title alleging ownership by adverse possession, the plaintiffs, Jacek Supronowicz and Iwona Supronowicz, appeal from the summary judgment rendered by the trial court in favor of the defendants Michael Eaton and Stephanie Hawker.[1] The plaintiffs claim that the court improperly concluded that they could not establish their claim of adverse possession as a matter of law because they (1) failed to demonstrate that privity existed between themselves and their predecessors in title for purposes of tacking periods of possession, (2) acknowledged the defendants' superior title to the disputed area, and (3) failed to show that their use of the disputed area was exclusive. The plaintiffs assert that genuine issues of material fact remain as to each of these issues and that the court therefore improperly granted the defendants' motion for summary judgment. We agree with the plaintiffs as to each of their claims and, for the reasons that follow, reverse the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiffs, and procedural history are relevant to our resolution of this appeal. The parties are the owners of adjoining parcels of land on Fair Oaks Drive in Shelton. The plaintiffs are the record owners of the parcel at 16 Fair Oaks Drive. Jacek Supronowicz acquired title to this property by warranty deed from John Nangle and Melissa Nangle (collectively, Nangles) in 2011.[2] The plaintiffs claim that they have used a portion of the property located between their home and a creek set inside of a shallow ravine—the disputed area—in various ways since they purchased their property. Following the natural path of the creek, the disputed area extends perpendicular to Fair Oaks Drive for more than two hundred feet.[3] It is widest along Fair Oaks Drive, extending, at its greatest width, about fifty feet into the defendants' titled property. Although a small corner of the plaintiffs' paved driveway lies on the disputed area, it is predominately a grassy side yard populated with trees, shrubs, and a utility pole. The plaintiffs "have used a portion of the [disputed] area as their driveway and have maintain[ed] a lawn, trees, shrubs and a utility pole on the other portions of the [disputed] area." On June 1, 2011, shortly after purchasing their property, the plaintiffs sought permission from the town of Shelton to install drains to divert water from the roof and foundation of their residence to the creek. In connection with the permit application, the plaintiffs sought and received permission from the defendants' predecessor in title to install the drains in the disputed area.[4] The plaintiffs' predecessors in title also used the disputed area in various ways from 1961 to 2011.[5]

The defendants are the record owners of the parcel at 12 Fair Oaks Drive, which is adjacent to the plaintiffs'

property. They acquired title to this property by warranty deed on May 15, 2017. Approximately one year after the conveyance, the defendants had the property surveyed, which revealed that the defendants are the record title holders of the disputed area. In the months following the survey, the defendants spoke with one or more of the plaintiffs to request that the plaintiffs not enter the disputed area and to inform the plaintiffs that the defendants were the record title holder of the disputed area. The plaintiffs, however, continued to enter the disputed area until, in August, 2019, the defendants erected an orange plastic fence along the border of the plaintiffs' property line as reflected in the defendants' survey.

The plaintiffs filed the underlying action in November, 2019, seeking to quiet title by adverse possession to the disputed area. The plaintiffs allege in their operative complaint[6] that they and their predecessors in title have been in "open, exclusive, hostile, adverse, and actual possession under a claim of right" of the disputed area for more than fifteen years, as required by General Statutes § 52-575 (a).[7] The plaintiffs allege that they and their predecessors in title had used a portion of the disputed area continuously as their driveway and had maintained the lawn, trees, shrubs, and a utility pole in the disputed area for more than fifteen years before the defendants put up the fence. The defendants filed an answer denying the essential allegations of the complaint and a counterclaim seeking a declaratory judgment affirming their ownership of the disputed area and quieting title in them.

The defendants subsequently filed a motion seeking summary judgment on the complaint and on their counterclaim and a memorandum of law in support thereof in which they argued that the plaintiffs could not demonstrate that the essential elements of adverse possession were met. The plaintiffs filed an objection to the defendants' motion for summary judgment, arguing that they and their predecessors in title had continuously and openly possessed the disputed area for more than the requisite fifteen year period.

The trial court, *Hon. Irene P. Jacobs*, judge trial referee, issued a memorandum of decision on the motion for summary judgment on April 6, 2022. The court held that, although the evidence suggests that both the plaintiffs and their predecessors in title had used the disputed area, the plaintiffs were not in privity with their predecessors in title because the plaintiffs' predecessors did not expressly convey to them the disputed area either orally or by deed and, thus, the plaintiffs could not tack their successive periods of adverse possession for purposes of satisfying the fifteen year statutory period. The court additionally held that "[t]he plaintiffs previously offered to purchase the disputed property from the defendants and therefore have acknowledged

the defendants' superior title."[8] The court further held that "the evidence shows that the plaintiffs did not exclusively possess the disputed area. Rather, both parties testified to using and maintaining the area." Regarding the defendants' counterclaim, the court held that the defendants had shown that "they solely possess the disputed area. Accordingly, no genuine issue of material fact exists with respect [to] the defendants' counterclaim." The court granted the defendants' motion for summary judgment.[9]

The plaintiffs subsequently filed a motion for reargument and reconsideration. The plaintiffs argued that the court had "erred in concluding that, as a matter of law, the [plaintiffs] could not tack the adverse use by their predecessor[s] in title to their own adverse use to meet the fifteen year limitations period." In support of their argument, the plaintiffs asserted that the intent of their predecessor in title to convey the disputed area "may be implied from the circumstances and need not be express . . . ." (Internal quotation marks omitted.) The court denied the plaintiffs' motion on May 9, 2022. This appeal followed.

On appeal, the plaintiffs argue that the court improperly concluded as a matter of law that (1) there was no privity between the plaintiffs and their predecessors in title for purposes of tacking periods of possession, (2) no genuine issue of material fact remained regarding whether the plaintiffs admitted superior title in the defendants, and (3) no genuine issue of material fact remained regarding whether the defendants' repeated entry into the disputed area beginning in July, 2018, defeated the exclusivity of the plaintiffs' use. The defendants respond that the court properly determined that there were no genuine issues of material fact and that they were entitled to summary judgment as a matter of law. For the reasons that follow, we agree with the plaintiffs that the evidence, construed in the manner most favorable to them, supports that there is a genuine issue of material fact as to each of the three claims raised by the plaintiffs.

As a preliminary matter, we set forth our standard of review and other relevant legal principles. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and

logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

"When title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner. . . . The use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof." (Internal quotation marks omitted.) *Dowling* v. *Heirs of Bond*, 345 Conn. 119, 143, 282 A.3d 1201 (2022).

"It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons. . . . [T]he possession [however] must be connected and continuous . . . ." (Internal quotation marks omitted.) *Har* v. *Boreiko*, 118 Conn. App. 787, 799, 986 A.2d 1072 (2010). "If one party's period of use or possession is insufficient to satisfy the fifteen year requirement, that party may tack on the period of use or possession of someone who is in privity with the party, a relationship that may be established by showing a transfer of possession rights." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 300 Conn. 297, 310 n.14, 12 A.3d 984 (2011).

"The authoritative rule of tacking successive possessions for the acquisition of title after fifteen years is found in *Smith* v. *Chapin*, 31 Conn. 530 [531–32] (1863). . . . Privity of estate is not necessary, but rather, privity of possession. It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons. This was settled in *Fanning* v. *Willcox*, 3 Day [Conn.] 258 [1808]. Doubtless the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact. . . . Privity of possession is defined as a continuity of actual possession, as between prior and present occupant, the possession of the latter succeeding the possession of the former under deed, grant, or other transfer or by operation of law." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 479–80, 546 A.2d

854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988).

"[T]he failure of a predecessor in title to convey the disputed area, either orally or by deed, destroys the connection between successive adverse claimants which is necessary to the successful acquisition of title by tacking successive adverse possessions . . . . See also 16 R. Powell, Real Property (2005) § 91.10 [2] (tacking not permitted when it is shown that the claimant's predecessor in title did not intend to convey the disputed [area])." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 652, 905 A.2d 1256 (2006).

To reverse the court's grant of summary judgment, there must be a genuine issue of material fact as to each of the issues raised, as "[a] defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim . . . ." (Internal quotation marks omitted.) *Costello & McCormack, P.C.* v. *Manero*, 194 Conn. App. 417, 430, 221 A.3d 471 (2019). We accordingly address each issue in turn, first addressing the issue of privity, then turning to the issue of recognition of superior title, and, last, addressing the issue of exclusivity. We conclude that there is a genuine issue of material fact as to each issue.

I

The plaintiffs first argue that the court improperly concluded that, for purposes of satisfying the fifteen year statutory period by tacking on their predecessors in title's period of adverse possession of the disputed area, there was no genuine issue of material fact that the plaintiffs lacked the requisite privity with their predecessors in title because the predecessors never expressly conveyed the disputed area to the plaintiffs. The plaintiffs argue that the evidence, construed in the manner most favorable to them, supports that their predecessors impliedly conveyed to them the disputed area and that, therefore, there is a genuine issue of material fact as to whether privity exists. We agree that there is a genuine issue of material fact as to whether privity exists in this case.

It is undisputed that the plaintiffs have not themselves adversely held the disputed area for the fifteen years required under § 52-575 (a) to acquire title by adverse possession. They therefore must tack the adverse use of their predecessors in title to their own use to satisfy the statutory period and acquire title to the disputed area. To do so, they are required to show that there was privity between themselves and their predecessors in title. "It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons. . . . [T]he possession [however] must be connected and continuous . . . ." (Internal quotation marks omitted.) *Har* v. *Boreiko*, supra, 118

Conn. App. 799. "If one party's period of use or possession is insufficient to satisfy the fifteen year requirement, that party may tack on the period of use or possession of someone who is in privity with the party, a relationship that may be established by showing a transfer of possession rights." (Internal quotation marks omitted.) *Caminis* v. *Troy*, supra, 300 Conn. 310 n.14.

In their brief in response to the defendants' motion for summary judgment, the plaintiffs argued that "the intent of the grantor to transfer possession of an area not specifically referenced in the deed of conveyance, but contiguous with it, may be [inferred] from all the surrounding circumstances and an express written or oral statement of intent is not necessary." Specifically, the plaintiffs argued that "the intent of the Nangles [the plaintiffs' predecessors in title] to transfer any interest that they may have had in the disputed parcel may be inferred from the surrounding circumstances. Their testimony shows that they absolutely believed that the disputed parcel was part of 16 Fair Oaks Drive, which they conveyed by deed to the plaintiffs."

The trial court granted the defendants' motion for summary judgment without addressing this argument in its memorandum of decision. Relying on *Har* v. *Boreiko*, supra, 118 Conn. App. 787, it held that there could be no privity as a matter of law because the plaintiffs' predecessors in title did not convey the disputed area either orally or by deed.[10] In reaching this conclusion, the court relied on the following passage from *Har*: "[T]he failure of a predecessor in title to convey the disputed area, either orally or by deed, destroys the connection between successive adverse claimants which is necessary to the successful acquisition of title by tacking successive adverse possessions . . . . See also 16 R. Powell, [supra] § 91.10 [2] (tacking not permitted when it is shown that the claimant's predecessor in title did not intend to convey the disputed parcel)." (Internal quotation marks omitted.) *Har* v. *Boreiko*, supra, 800, quoting *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 97 Conn. App. 652.

The court's reliance on *Har* and related case law, however, is misplaced. The passage from *Har* quoted in the preceding paragraph comes from *Durkin Village Plainville, LLC*; see *Har* v. *Boreiko*, supra, 118 Conn. App. 800; which in turn quoted *Marquis* v. *Drost*, 155 Conn. 327, 332, 231 A.2d 527 (1967). See *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 97 Conn. App. 652. These cases all involve different factual circumstances than those present here. In *Marquis*, the predecessor in title had expressly *excluded* the disputed area from the deed. *Marquis* v. *Drost*, supra, 329 ("[i]t is undisputed that each deed in the plaintiffs' chain of title to lot 16 expressly excluded and excepted [the disputed area] from the conveyance of the lot"). Our Supreme Court additionally noted that the predecessor

in title in that case had not adversely used the disputed area, making the issue of tacking moot, because there was no prior period of adverse use onto which the claimant could tack their own use. Id., 331–32. Our Supreme Court nevertheless went on to say in dicta that a "connection between successive adverse claimants . . . is necessary to the successful acquisition of title by tacking successive adverse possessions under the rule noted in such cases as *Smith* v. *Chapin*, [supra] 31 Conn. 530." *Marquis* v. *Drost*, supra, 332. Although our Supreme Court did state in *Marquis* that there was no oral conveyance of the disputed area and that the deed had expressly excluded the disputed area, it did not, as paraphrased by *Durkin Village Plainville, LLC*, expressly limit the required connectivity between successive adverse claimants to an oral or written conveyance of the disputed area. Id.; see also *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 652.

The question, therefore, is what evidence is sufficient to find that a grantor intended to convey the disputed area to the grantee, thereby establishing the continuous connection between successive adverse claimants required to find privity and tack the successive adverse uses. It is clear from our case law; see *Marquis* v. *Drost*, supra, 155 Conn. 332; *Har* v. *Boreiko*, supra, 118 Conn. App. 800; *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 97 Conn. App. 652; that an express conveyance of the disputed area either orally or by deed is sufficient to establish that the grantor intended to convey the disputed area. Neither this court nor our Supreme Court, however, has addressed whether a grantor's intent to convey a disputed area may be established by implication.

This issue was, however, addressed by the Superior Court in *Zhang* v. *56 Locust Road, LLC*, Docket No. CV-12-6015791-S, 2016 WL 624045 (Conn. Super. January 13, 2016), aff'd, 177 Conn. App. 420, 172 A.3d 317, cert. denied, 327 Conn. 986, 175 A.3d 44 (2017). Although not binding on this court, *Zhang* is persuasive, particularly in light of the majority rule in other jurisdictions discussed subsequently in this opinion. See annot., 17 A.L.R.2d 1160, § 8 (1951).

In *Zhang*, the adverse claimants argued that they may tack their adverse use of the disputed area to that of their predecessors in title. *Zhang* v. *56 Locust Road, LLC*, supra, 2016 WL 624045, *8. Although there was no express conveyance of the disputed area, either orally or by deed, the court found that the facts and circumstances of the use of the disputed area leaves "no doubt that the [predecessors in title] intended to convey the disputed area along with the deed-described property, in the transactions leading to ownership of 40 Locust Road by the plaintiffs." Id., *12.

The property at issue in *Zhang* included a horse riding ring with ancillary structures that were partially on the

claimant's property and partially on the disputed area. Id., *4. The court reasoned that "the discussions, marketing materials, etc., as well as the layout of the property with the riding ring and fencing all facially appearing to be part of the conveyed property, leave the court with the firm impression that there was an intent to convey the entirety of 40 Locust Road, including all ancillary or appurtenant interests . . . ." Id., *10. The court emphasized that it "believe[d] that the physical layout virtually mandates such a conclusion. The riding ring . . . is essentially indivisible in a structural sense and a usage sense. The same can be said (albeit to a lesser extent) about the fence that . . . almost completely surrounds that entire end of the property including the riding ring, providing an enclosure for horses . . . . Quite simply, it would be irrational to convey *part* of a riding ring or paddock to a buyer of the property, leaving the remainder of the enclosed oval area out of the transaction." (Citation omitted; emphasis in original; footnote omitted.) Id., *11. The court therefore found an implied intent to convey the disputed area along with the property described in the deed and found that the claimant could therefore tack their predecessor's adverse use of the disputed area to their own. Id., *11–12, 16. For the following reasons, we conclude that the approach employed in *Zhang* is best suited to resolving the issue of privity and that, applying that approach, there is a genuine issue of material fact as to whether privity exists in this case under a theory of implied conveyance.

As outlined by the American Law Reports, which attempts to compile the decisional law of other jurisdictions, "the doctrine which appears generally to prevail is that a transfer in fact of adverse possession, or of the adverse possession and claim of an area not within the description of the deed or contract, will be effective for tacking purposes though the same appears to have occurred by implication only, by force of the circumstances and acts of the parties, and is not shown to have been evidenced by any declaration of transfer or other direct words. . . . A requirement of express delivery of possession would be not only illogical but exceedingly burdensome in view of the numerous cases in which the parties though claiming all of the land in question, and in a manner characterizing their holdings as adverse to the whole world, were not aware that any of it was not within the deed or contract. The circumstances generally are to be considered in determining whether possession of the disputed area was transferred to the grantee." Annot., 17 A.L.R.2d, supra, § 8, pp. 1160–61.

"[W]here title by adverse possession is claimed to an area contiguous to that described in the deed or contract, and the whole property, described and not described, was in use by the vendor as a unit, and the fact thereof was apparent by reason of the position of

fences, hedges, buildings, etc., the instrument instead of operating to negative the element of privity, seems to possess, as conjoined with such circumstances, an evidentiary value in support of privity, and this is most noticeable in instances in which the description used was such that it might reasonably have been supposed to include the whole property." (Footnote omitted.) Id., § 1, p. 1131.

From our review of the law of other jurisdictions, it is apparent that the majority rule is that privity can be established by an implied conveyance of the disputed area.[11] Implication of a transfer of possession of the disputed area is most commonly found in two circumstances: (1) when the disputed area is enclosed within the deed described property[12] or (2) when a building or other structure stands in part on the disputed area.[13]

There are, additionally, a few cases that find that the disputed area was impliedly conveyed because a natural boundary appeared to enclose the property. In *Freed v. Cloverlea Citizens Assn., Inc.*, 246 Md. 288, 291–92, 228 A.2d 421 (1967), the adverse claimants and their predecessors in title maintained an area to the south of their property that abutted a naturally formed ditch. The claimants were told by their predecessors in title that the property line went to the ditch, although the real property line was several feet to the north of it. Id., 291, 294. The claimants and their predecessors maintained the disputed area by cultivating a garden, as well as planting trees, cleaning the ditch of debris, and mowing the lawn. Id., 292–94. One of the claimants' predecessors in title said that he never erected a fence to enclose the property because the ditch acted as a natural boundary. Id., 292. After reviewing persuasive law from other jurisdictions, the court in *Freed* analogized the circumstances of the case to cases in which the disputed area had been enclosed by a fence and concluded that the claimants could tack the adverse use of their predecessors to their own use.[14] Id., 301–304.

In *Clithero v. Fenner*, 122 Wis. 356, 360, 99 N.W. 1027 (1904), the Supreme Court of Wisconsin similarly found privity sufficient to tack successive adverse uses when a creek enclosed the disputed area with the property transferred by deed. The court stated: "It is . . . apparent from the evidence that [the] respondent took possession of the whole, by occupying it, [enclosing] it, and using the part specified in the deed and this adjoining strip as an entirety. In the light of these circumstances, the presumption that the conveyance must be limited to the calls of the deed is overcome by the established facts that [the] respondent obtained possession of the tract outside of the description as a part of the premises purchased under the deed. Such a transfer establishes a successive relationship to the tract in controversy, making the parties to the transfer privies in possession; thus conferring all the legal rights of the

father, as vendor, on [the] respondent, as his vendee."
Id., 361.

Whether privity exists in cases of implied transference is inherently a fact dependent inquiry. In the present case, there is a genuine issue of material fact as to whether privity exists. This is based on whether the plaintiffs' predecessors in title impliedly transferred the disputed area to the plaintiffs. Although there is no fence or building on the disputed area in this case, the disputed area is bound by a ravine and a creek. Several cases have analogized natural boundaries to cases involving fences and have found an implied transfer on the basis of the existence of a natural boundary. The plaintiffs' predecessors in title, additionally, believed that the creek was the boundary line and that they owned the disputed area up until the time they sold the property to the plaintiffs.[15] Whether an implied transfer of the disputed area may be inferred from the evidence in the present case raises a question of fact that cannot properly be resolved by the court at summary judgment.

## II

The plaintiffs next claim that the court improperly rendered summary judgment because there is a genuine issue of material fact as to whether the plaintiffs recognized the defendants' superior title[16] to the disputed area by asking the defendants' predecessor in title for permission to install drains on the disputed area three months after the plaintiffs purchased their property.[17] We agree.

Although summary judgment is certainly not precluded in adverse possession cases, adverse possession raises predominantly fact intensive issues that generally must be resolved at trial. Our Supreme Court has stated that "[i]t is the province of the jury, or court sitting as a jury, to determine from conflicting or doubtful evidence the existence of facts necessary to constitute adverse possession . . . . If there is at least some evidence, although slight, which is sufficient to be submitted to the jury, and which tends to show the existence of the essential facts alleged to constitute adverse possession, and such evidence is disputed, or, if undisputed, is of a doubtful character, the question as to the existence of such facts is one of fact for the jury and should be submitted to [it] for determination, under proper instructions from the court; or in case of a trial by the court alone, the question is one of fact for the court sitting as a jury." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Larocque*, 302 Conn. 562, 573, 31 A.3d 1 (2011).

Here, the defendants submitted undisputed evidence that the plaintiffs had asked the defendants' predecessor in title for permission to install drains on the disputed area shortly after the plaintiffs purchased their property. According to the defendants, this evidence is

an acknowledgement by the plaintiffs that the defendants hold superior title to the disputed area. The signed document provides in relevant part that the defendants' predecessors "hereby give permission to the present owners of 16 Fair Oaks Drive, Shelton, Connecticut, to install one (1) curtain drain and one (1) footing drain, both of which will drain into the water course channel that runs parallel to the boundary of our properties. The present owners of 16 Fairs Oaks Drive shall be responsible for all costs related to the installation and maintenance of both drains. This agreement is limited to the installation of these two drains and nothing additional."

The defendants argue that, by seeking this permission, the plaintiffs unequivocally have recognized the defendants' superior title to the disputed area. According to the defendants, the language of the document was unambiguous and clearly shows that permission was sought to enter the disputed property, as the document specifically refers to the construction and maintenance of the drains. They claim that "[t]he letters specifically limited permission to the installation of the drains and imposed an affirmative obligation on the plaintiffs to maintain them at the plaintiffs' own cost, neither of which permissions would have been necessary if the plaintiffs' actions were limited to improvements conducted on their own property. This evidence alone decisively demonstrates [that] the plaintiffs were aware of the need for, and actively sought, the defendants' predecessors' consent to enter the disputed area and is fatal to the plaintiffs' claim." In so arguing, the defendants characterize the permission granted as permission to use the disputed area.

The plaintiffs, in their depositions, counter that they sought permission from their neighbors because the proposed drains would increase the flow of water into the creek they believed to be owned by the defendants' predecessor in title and which marked the boundary between their properties.[18] They believed that the city of Shelton required this document because the installation of the drains would increase the water draining into the creek owned by the defendants' predecessors.[19]

There is therefore conflicting evidence regarding whether the permission sought was for the use of the disputed area or for the increase in water to the creek along the then supposed boundary line. Consequently, we conclude that there is a genuine issue of material fact as to whether the plaintiffs ever recognized a claim of superior title to the disputed area that would defeat their adverse possession claim. This factual dispute must be resolved by the fact finder, not by the court at summary judgment.

### III

Last, the plaintiffs claim that the court improperly

concluded that the defendants' entry into the disputed area defeated the exclusivity of the plaintiffs' use. We conclude for the following reasons that there is a genuine issue of material fact regarding the exclusivity of the plaintiffs' use of the disputed area.

The defendants submitted evidence to the court that they began to use and maintain the disputed area in 2018 and, thus, the plaintiffs' use of the disputed area was not exclusive as required to establish adverse possession. Specifically, the defendants rely on the deposition of Jacek Supronowicz in making this argument. In his deposition, Jacek Supronowicz said that he had observed the defendants mowing the lawn and weed whacking the disputed area.[20] Although he believed this use happened more than ten times, he could not recall how frequent this use was.[21] The defendants did not themselves testify as to this use.

There is, under the issue of privity discussed in part I of this opinion, a genuine issue of material fact as to whether adverse possession was established prior to the defendants' entry into the disputed area in 2018. The plaintiffs presented evidence that the Nangles, their predecessors in title, had used the disputed area since 2007 and that the Nangles' parents had used the disputed area since they purchased the property in 1961. In *Roche* v. *Fairfield*, 186 Conn. 490, 503, 442 A.2d 911 (1982), our Supreme Court held that, even if the title owner of a disputed area acts in a manner to try to toll the period of adverse use, if the statutory period of adverse use and all of the other elements of adverse possession had previously been established by the claimant, then the claimant nevertheless has obtained title by adverse possession. Similarly, in *Boccanfuso* v. *Green*, 91 Conn. App. 296, 303–304, 880 A.2d 889 (2005), the plaintiffs had used the disputed area for more than fifteen years before the defendants purchased their property. This court held that "any claim of ownership that the defendants asserted on the basis of their use of the property was too late to affect the exclusivity of the plaintiffs' use during the period within which adverse possession was established initially." Id., 308. If privity exists between the plaintiffs and their predecessors in title, then it is possible that, if the fact finder determines that all of the requisite elements of adverse possession have been met, title by adverse possession had already been established before the alleged shared use of the disputed area.

There is additionally a factual question as to whether the plaintiffs' use of the disputed area could nevertheless be considered exclusive, even if the defendants began entering the disputed area in 2018. "In general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own

use and the exclusion of others. . . . Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use. . . . It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Roche* v. *Fairfield*, supra, 186 Conn. 502–503. "In adverse-possession doctrine, the exclusivity requirement describes the behavior of an ordinary possessor and serves to give notice to the owner." (Internal quotation marks omitted.) *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 289 n.23, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005), and cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

Whether the plaintiffs' activities in the disputed area are consistent with open acts of ownership is a factual determination. To the extent the defendants' activities beginning in 2018 are relevant, we acknowledge that the defendants' repeated entry into the disputed area to mow and weed whack brings into doubt whether the plaintiffs' actions were acts of ownership sufficient to establish the exclusivity element of adverse possession. However, "[e]ven assuming that the plaintiff faces a difficult challenge in ultimately proving its case at trial, that assumption cannot form the basis for granting a motion for summary judgment. So extreme a remedy as summary judgment should not be used as a substitute for trial or as a device intended to impose a difficult burden on the non-moving party to save his [or her] day in court unless it is clear that no genuine issue of fact remains to be tried. . . . A judge's function when considering a summary judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried; rather, only if the case is dead on arrival, should the court take the drastic step of administering the last rites by granting summary judgment." (Internal quotation marks omitted.) *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 631, 57 A.3d 391 (2012).

Because a "claimant's possession need not be absolutely exclusive" but, rather, needs to be only the "type of possession [that] would characterize an owner's use"; (internal quotation marks omitted) *Roche* v. *Fairfield*, supra, 186 Conn. 502; it is the role of the fact finder to determine whether the claimant's use, even if not absolutely exclusive, is nevertheless the type of ownership sufficient to find the exclusivity required to establish adverse possession. There is, therefore, a genuine issue as to whether the plaintiffs' use was nevertheless sufficiently exclusive, despite the defendants also entering the area after 2018.

In summary, we conclude that the court improperly granted the defendants' motion for summary judgment. As outlined previously in this opinion, contrary to each

of the defendants' three arguments, there remain genuine issues of material fact.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The complaint also named Village Mortgage Company as an additional defendant, but it failed to appear. Accordingly, we refer to Michael Eaton and Stephanie Hawker as the defendants.

[2] Jacek Supronowicz subsequently quitclaimed his interest in the property with right of survivorship to himself and his wife, Iwona Supronowicz.

[3] The disputed area, according to the complaint, "[c]ommenc[es] at a point where a creek crosses from land designated as Lot 4 to [l]and designated as Lot 3 on a certain map entitled, 'final Plan of Woodland Park, Section 1,' dated April 1960, [r]evised January 1961, made by Richard J. Nowakowski and on file in the Shelton Town Clerk's office, then;

"EASTERLY: along the northerly side of the creek a distance of 245 ± feet then;

"NORTHERLY by Fair Oaks Drive 50 . . . ± feet, then 90 degrees;

"WESTERLY along the northerly boundary of land designated as Lot No. 3 on a map entitled 'final Plan of Woodland Park, Section 1,' dated April 1960, [r]evised January 1961, made by Richard J. Nowakowski and on file in the Shelton Town Clerk's office, a distance of 240 ± feet to the point of beginning."

[4] The permission read: "I hereby give permission to the present owners of 16 Fair Oaks Drive, Shelton, Connecticut, to install one (1) curtain drain and one (1) footing drain, both of which will drain into the water course channel that runs parallel to the boundary of our properties. The present owners of 16 Fair Oaks Drive shall be responsible for all costs related to the installation and maintenance of both drains. This agreement is limited to the installation of these two drains and nothing additional."

[5] The plaintiffs' predecessors in title maintained the disputed area by mowing grass, plowing snow, raking leaves, and fertilizing the lawn, as well as planting trees in the disputed area.

[6] The defendants filed a request to revise on December 18, 2019. The defendants requested that the plaintiffs, in relevant part, revise their complaint to clarify what actions were taken by the plaintiffs and their predecessors in title to evidence the " 'open, exclusive, hostile, adverse, and actual possession' " of the disputed area. The court, *Tyma*, *J.*, overruled the plaintiffs' objection to the relevant requested revision, and the plaintiffs filed their revised complaint on October 27, 2020. The revised complaint is the operative complaint in this action.

[7] "[Section] 52-575 (a) establishes a fifteen year statute of repose on an action to oust an adverse possessor." (Footnote omitted.) *O'Connor* v. *Larocque*, 302 Conn. 562, 578–79, 31 A.3d 1 (2011). Specifically, General Statutes § 52-575 (a) provides in relevant part that "[n]o person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless within such fifteen-year period, any person or persons claiming ownership of such lands and tenements and the right of entry and possession thereof against any person or persons who are in actual possession of such lands or tenements, gives notice in writing to the person or persons in possession of the land or tenements of the intention of the person giving the notice to dispute the right of possession of the person or persons to whom such notice is given and to prevent the other party or parties from acquiring such right, and the notice being served and recorded as provided in sections 47-39 and 47-40 shall be deemed an interruption of the use and possession and shall prevent the acquiring of a right thereto by the continuance of the use and possession for any length of time thereafter, provided an action is commenced thereupon within one year next after the recording of such notice. . . ."

[8] In so holding, the court relied on *Allen* v. *Johnson*, 79 Conn. App. 740, 746–47, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003). The defendants concede on appeal that the court's reliance on *Allen* and "reliance on [the plaintiffs'] offers to purchase an easement to the disputed area and/or swap land as evidence of the plaintiffs' acknowledgment of the defendants'

superior rights was misplaced," but they argue that the court's legal conclusion was nevertheless correct. The defendants instead argue before this court that the plaintiffs recognized the defendants' superior title by obtaining the permission of the defendants' predecessor in title to install drains in the disputed area and, therefore, that the court's conclusion may nevertheless be affirmed.

[9] In its original memorandum of decision, the court stated that, "[f]or the foregoing reasons, the defendants' motion for summary judgment is denied." The defendants thereafter filed a motion to reconsider, arguing that there appeared to be a scrivener's error as to the court's ultimate conclusion because the substance and weight of the court's findings and legal conclusions did not align with the court's conclusion. The plaintiffs objected to the motion to reconsider, arguing that "the court's order denying the motion for summary judgment is consistent with both the factual record as well as the law." The court agreed with the defendants that a scrivener's error had occurred and granted the defendants' motion to reconsider. The court corrected the last sentence of the decision to read, "For the foregoing reasons, the defendants' motion for summary judgment is granted."

[10] Specifically, the court stated that, "[w]hile the evidence suggests that the plaintiffs' predecessor in title did use the dispute[d] area, the evidence conclusively shows that the plaintiffs were not conveyed the disputed area, either orally or by deed, and therefore cannot claim successive adverse possession from their predecessors in title."

[11] North Carolina is firmly in the minority in expressly limiting tacking to cases of express conveyance. See N.C. Gen. Stat. Ann. § 1-40 (2021); *Ramsey* v. *Ramsey*, 229 N.C. 270, 273, 49 S.E.2d 476 (1948) ("[t]he privity necessary to warrant the tacking of the possession of successive claimants by adverse possession must be created by grant, devise, purchase, or descent").

A minority of other jurisdictions have similarly held that "a transfer sub silentio is insufficient to permit the tacking of the possessions of the undescribed area." Annot., 17 A.L.R.2d, supra, § 8, p. 1160; see also id., § 10, pp. 1171–74 (collecting cases from Michigan, New York, Tennessee, and Wisconsin, but noting they are now of "doubtful authority" in light of more recent case law in those states).

The American Law Reports concludes that, "[e]xcept for those few, sometimes uncertain, authorities . . . the doctrine which appears generally to prevail is that a transfer in fact of adverse possession, or the adverse possession and claim of an area not within the description of the deed or contract, will be effective for tacking purposes though the same appears to have occurred by implication only, by force of the circumstances and acts of the parties, and is not shown to have been evidenced by any declaration of transfer or other direct words." Id., § 8, p. 1160.

[12] "In most jurisdictions, and under the circumstances of most cases, the successive adverse possessions of vendor and purchaser of an area not within the description of the deed or contract but lying along and extending up to a fence apparently marking the boundary line between the land sold and neighboring land may be tacked upon the theory of an implied delivery of possession of such area." Annot., 17 A.L.R.2d, supra, § 10, p. 1168; see *Ringstad* v. *Grannis*, 12 Alaska 190, 197, 171 F.2d 170 (1948); *St. Louis Southwestern Railway Co.* v. *Mulkey*, 100 Ark. 71, 75, 139 S.W. 643 (1911); *Cooper* v. *Tarpley*, 112 Ind. App. 1, 10, 41 N.E.2d 640 (1942); *Howind* v. *Scheben*, 233 Ky. 139, 141, 25 S.W.2d 57 (1930); *Wishart* v. *McKnight*, 178 Mass. 356, 361–62, 59 N.E. 1028 (1901); *Davock* v. *Nealon*, 58 N.J.L. 21, 25, 32 A. 675 (1895).

[13] "Ordinarily, the fact that the vendor and purchaser were successively in adverse possession of buildings or other structures encroaching on land adjoining that described in the deed or contract is convincing evidence of a transfer to the purchaser of possession of the area so appropriated." Annot., supra, 17 A.L.R.2d § 12, p. 1176; see also *Belotti* v. *Bickhardt*, 228 N.Y. 296, 308–309, 127 N.E. 239 (1920); *Peoples* v. *Hagaman*, 31 Tenn. App. 398, 407, 215 S.W.2d 827 (1948).

[14] The court in *Freed* cited to several cases, including the New Hampshire case of *Alukonis* v. *Kashulines*, 96 N.H. 107, 109, 70 A.2d 202 (1950), which held that "there was evidence [that] the plaintiff was shown the bounds, which included the [disputed area], by her predecessor in title and that this tract had been [enclosed] and cultivated for many years by the plaintiff and her predecessors. This appears sufficient to support the plaintiff's right to tack." See *Freed* v. *Cloverlea Citizens Assn., Inc.*, supra, 246 Md. 302.

[15] At a deposition, the plaintiffs' attorney questioned Melissa Nangle, one of the plaintiffs' predecessors in title, as follows:

"Q. You testified there's a brook line between [the defendants' predecessors in title's] house and 16 Fair Oaks Drive?

"A. Yes.

"Q. Okay. And can you tell me when—in the 1960s, do you know what—where the boundary—or did you have any conception of where the boundary lay between the [defendants' predecessors in title's] house and 16 Fair Oaks Drive?

"A. It was the brook; that one side was theirs and the other side was ours.

"Q. So, as growing up, that was your understanding?

"A. Absolutely.

"Q. Where did you get that understanding?

"A. I just—it was just a natural belief. It just looked—that's how it was. I was never told otherwise.

"Q. Okay. And since 1961 to 2011, did you or your family use the area between the brook and your house and driveway at 16 Fair Oaks Drive?

"A. We always maintained all that property. My father may have used it for things that I'm not aware of or don't remember, but we always maintained that property from the brook on.

\* \* \*

"Q. When [John Nangle] mowed the lawn—as far as the edge of the brook?

"A. Oh, yes, the whole property. That was considered our property, to my knowledge."

[16] Recognition of superior title implicates the continuous element of adverse possession. See *Allen* v. *Johnson*, 79 Conn. App. 740, 746, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003). "An adverse possessor may interrupt his or her continuous possession by acting in a way that acknowledges the superiority of the real owner's title. . . . [T]he possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. . . . Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it. . . . Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew." (Citation omitted; internal quotation marks omitted.) Id.

[17] See footnote 8 of this opinion.

[18] The defendants' attorney questioned Jacek Supronowicz as follows:

"Q. Okay. Why do you think these [permissions] were required?

"A. Because—I told you before [in] the beginning, we know that the brook is on their side. That's why we asking them if we can do it and dump the water in the brook.

"Q. Because presumably dumping water in the brook would have some effect on the way the water flows in the brook?

"A. Everything is possible.

"Q. And all of the individuals who said that they were all co-owners of 12 Fair Oaks Drive all gave you consent to install the drains; that's correct?

"A. Yes.

"Q. Which means they didn't object to having additional water go into the brook; is that right?

"A. I think so."

[19] The defendants' attorney cross-examined Iwona Supronowicz as follows:

"Q. Okay. Do you know who prepared the documents?

"A. They were presented to me, and they've been already signed. And they give it to me so I can give them to the city of Shelton because I need to have that because Mr. John Cook [an individual with the city's Inland/Wetland Commission] said that I need to have a statement from 12 Fair Oaks Drive about water coming in from our drains to the watercourse, to the brook.

\* \* \*

"Q. . . . And you just mentioned that the reason that [Cook] told you you needed these letters was because of water that was going to drain into the watercourse.

"A. Yes.

"Q. Is that correct?

"A. Yes. Because in the drain you have water, and you have to dump it someplace. So, we decided to dump it to the brook."

[20] The defendants' attorney questioned Jacek Supronowicz as follows:

"Q. In your interrogatory responses you mentioned that the defendants had been observed by you or your wife in the disputed area mowing the

lawn and weed whacking.

"A. Yes."

[21] The defendants' attorney questioned Jacek Supronowicz as follows:

"Q. Okay. Could you give me a range of how many times you think you might have observed [the defendants mowing and weed whacking the disputed area]?

"A. I don't remember.

"Q. Okay. Would it be more than ten times?

"A. Yes.

* * *

"Q. All right. Would you say that the number of times you observed either of the defendants in the disputed area was more than fifty times?

"A. Maybe."

―――――――――――――――――――――