******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ALVORD, J., dissenting. I agree with the majority opinion's recitation of the factual and procedural history of this appeal. I respectfully disagree with the majority's rejection of the third claim raised by the plaintiffs, Alexa Pascual and Freiny Francisco, challenging the trial court's conclusion that the defendant, Tammy K. Perry, could tack her predecessor in title's period of adverse possession onto her own. I, therefore, would reverse the judgment of the trial court and remand the matter for a new trial.[1]

At the outset, I briefly reiterate the substantial rights at stake in an adverse possession action and the commensurate, demanding standard applied to such a disfavored claim. "The doctrine of adverse possession is to be taken strictly. . . . Clear and convincing proof of the elements of an adverse possession claim is an exacting standard . . . . In evaluating a claim of adverse possession under that demanding standard, [e]very presumption is in favor of possession in subordination to the title of the true owner. . . . That presumption is rooted in the recognition that there are no equities in favor of a person seeking to acquire property of another by adverse holding. . . .

"The demanding burden placed on a party claiming adverse possession of the property of another reflects the fact that such actions are disfavored. . . . As the Supreme Court of Ohio explained, [a]dverse [p]ossession represents the forced infringement of a landowner's rights, a decrease in value of the servient estate, the encouraged exploitation and development of land, the generation of animosity between neighbors, a source of damages to land or loss of land ownership, the creation of forced, involuntary legal battles, and uncertainty and perhaps the loss of property rights to

---

[1] Because I agree with the plaintiffs' third claim, I need not reach the other claims of error advanced by the plaintiffs.

landowners with seisin. . . . Accordingly, we have recognized that adverse possession is disfavored. . . . Moreover, [a] successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. . . . [T]hat is why the elements of adverse possession are stringent." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Mulvey* v. *Palo*, 226 Conn. App. 495, 500–503, 319 A.3d 211, cert. denied, 350 Conn. 902, 322 A.3d 1059 (2024).

I also note the well settled law regarding tacking successive possessions to establish an adverse possession claim. "The authoritative rule of tacking successive possessions for the acquisition of title after fifteen years is found in *Smith* v. *Chapin*, 31 Conn. 530 (1863). . . . *Privity of estate* is not necessary, but rather, *privity of possession.* It is sufficient if there is an adverse possession *continued uninterruptedly* for fifteen years whether by one or more persons. This was settled in *Fanning* v. *Willcox*, 3 Day [(Conn.)] 258 [1808]. Doubtless the possession must be *connected* and *continuous*, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact. . . . *Smith* v. *Chapin*, supra, 531–32. Privity of possession is defined as a continuity of actual possession, as between prior and present occupant, the possession of the latter succeeding the possession of the former under deed, grant, or other transfer or by operation of law." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Matto* v. *Dan Beard, Inc.*, 15 Conn. App. 458, 479–80, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988). "[T]he failure of a predecessor in title to convey the disputed

area, either orally or by deed, destroys the connection between successive adverse claimants which is necessary to the successful acquisition of title by tacking successive adverse possessions . . . .” (Internal quotation marks omitted.) *Supronowicz* v. *Eaton*, 224 Conn. App. 66, 76, 312 A.3d 100, cert. denied, 349 Conn. 904, 312 A.3d 1057 (2024).

As the majority opinion recognizes, the record in the present case does not support a determination that the defendant’s predecessor in title, Veta Pipa, expressly conveyed the disputed area to the defendant. This court previously has suggested, however, that a theory of implied conveyance may be available to a party attempting to establish privity of possession. Because that is the only possible theory on which the trial court in the present case could have permitted tacking, we reiterate that concept. “[T]he doctrine which appears generally to prevail is that a transfer in fact of adverse possession, or of the adverse possession and claim of an area not within the description of the deed or contract, will be effective for tacking purposes though the same appears to have occurred by implication only, by force of the circumstances and acts of the parties, and is not shown to have been evidenced by any declaration of transfer or other direct words.” (Internal quotation marks omitted.) Id., 82, quoting annot., 17 A.L.R.2d 1160, § 8 (1951).

The plaintiffs’ claim in the present case challenges the trial court’s conclusion that the defendant, who had used the disputed area for five years, could tack on her predecessor in interest’s thirty years of use. Specifically, the plaintiffs argue that the court erred in concluding that tacking applies in this case because there was “no showing or evidence of Pipa’s specific intent to transfer the disputed area to the defendant.”

After the trial court issued its decision in the present case, this court, in reviewing a pretrial decision on a

summary judgment motion in *Supronowicz* v. *Eaton,* supra, 224 Conn. App. 80, considered whether, for the purpose of tacking, a "grantor's intent to convey a disputed area may be established by implication." After reviewing case law from other jurisdictions, this court stated that "[i]mplication of a transfer of possession of the disputed area is most commonly found in two circumstances: (1) when the disputed area is enclosed within the deed described property or (2) when a building or other structure stands in part on the disputed area." (Footnote omitted.) Id., 83. The court next stated that "a few cases . . . find that the disputed area was impliedly conveyed because a natural boundary appeared to enclose the property." Id., 84. Because the appeal in *Supronowicz* was from the trial court's rendering of summary judgment, this court's consideration was confined to whether the trial court improperly had determined that there was no genuine issue of material fact as to whether privity existed. In reversing the granting of the summary judgment motion, this court concluded that "[w]hether an implied transfer of the disputed area may be inferred from the evidence in the present case raises a question of fact that cannot properly be resolved by the court at summary judgment." Id., 85–86.

In the present case, the trial court held a trial on the merits of the adverse possession count of the defendant's counterclaim and failed to resolve the factual issue of whether an implied transfer of the disputed area may be inferred from the evidence. The trial court instead identified the successive use of the disputed area by the defendant and her predecessor in interest and concluded that "[t]he defendant is able to 'tack' . . . Pipa's thirty years of exclusive use of the disputed piece onto five more years of her own use. This creates an uninterrupted period of thirty-five years of exclusive use . . . ." The characterization of the defendant and

Pipa's use as uninterrupted, however, does not represent a finding of privity. The trial court made no findings of fact as to Pipa's intent to transfer possession of the disputed area. As this court has recognized, "[w]hether privity exists in cases of implied transference is inherently a fact dependent inquiry." *Supronowicz* v. *Eaton*, supra, 224 Conn. App. 85.

Moreover, the findings made by the trial court in connection with other elements of the defendant's claim of adverse possession are inconsistent with a conclusion that the defendant could avail herself of the tacking doctrine. Specifically, the trial court's findings call into question its conclusion that tacking was available under the considerations outlined in *Supronowicz*. See *Padula* v. *Arborio*, 219 Conn. App. 432, 459, 296 A.3d 276 (reversing in part judgment of adverse possession with respect to delineation of property where award contradicted court's own factual findings), cert. denied, 348 Conn. 903, 301 A.3d 528 (2023).

First, the trial court's findings as to the existence and placement of partial stockade fencing are inconsistent with a conclusion that the disputed area was enclosed within the deed described property. Specifically, the trial court found that, although the fence previously had extended farther south, nearly to the southerly boundary of both properties, "[t]he fence does not extend all the way to Albany Street," but rather only to the rear wall of the plaintiffs' house. Moreover, the trial court found that the "location at the top of [a small rise in elevation] helps to provide the rear yard of the plaintiffs' house with privacy from anyone looking east from the defendant's property." Courts have distinguished fences of convenience from those appearing to mark a boundary line, with the partial fence at issue here serving as the former rather than the latter. See *Rutar Farms & Livestock, Inc.* v. *Fuss*, 651 P.2d 1129, 1134 (Wyo. 1982) ("[a]n irregular fence, following the

general course of a river and obviously not following what any reasonable person would consider a boundary line, appears to be a fence of convenience or a control fence rather than a boundary fence"). Accordingly, the trial court's findings regarding the partial stockade fence are inconsistent with a determination that the disputed area was enclosed within the deed described property.

Second, the court's findings are correspondingly unsupportive of an intent to convey the disputed area on the basis that a building or other structure stands in part on the disputed area. The court's only finding with respect to an improvement in the disputed area was the yard drain. The court found that the defendant's predecessor in title had a contractor install the yard drain "at the southerly end of the ditch," following the intrusion of water into the basement of the defendant's home. The court found that "the evidence is not clear about the workings of the 'yard drain' but the evidence is that there is no underground piping involved with the gravel ditch." It would be unreasonable to conclude that the yard drain constituted a "structure stand[ing]" on the disputed area for purposes of proving the intent to convey the disputed area, given the limited findings associated with it.

Finally, the court's finding that a "small rise in elevation" existed is not supportive of a determination that a "natural boundary appear[s] to enclose the property." Neither *Supronowicz* nor the authorities cited therein involve a small rise in elevation, but rather more substantial natural boundaries. Cf. *Supronowicz* v. *Eaton,* supra, 224 Conn. App. 85 (genuine issue of material fact existed with respect to whether implied transfer occurred on basis of existence of ravine and creek bordering disputed area); *Freed* v. *Cloverlea Citizens Assn., Inc.*, 246 Md. 288, 292, 228 A.2d 421 (1967) (tacking permitted where drainage ditch, which was

described as "a natural fence," supported finding of implied conveyance (internal quotation marks omitted)); *Clithero* v. *Fenner*, 122 Wis. 356, 359, 99 N.W. 1027 (1904) (predecessor in title had "[e]nclosed [the disputed area] with a fence on all sides, except along the creek, where the bank and water formed a natural barrier"). Accordingly, the trial court's finding of a small rise in elevation is not equal to a finding of a natural boundary supporting an inference of an implied transfer of the disputed area.

I am persuaded, reading the trial court's memorandum of decision as a whole, that the court's conclusion that the defendant could avail herself of the tacking doctrine amounts to reversible error. That conclusion is unsupported by any factual findings of an intention by Pipa to convey the disputed area to the defendant, and those factual findings that the court made are inconsistent with its conclusion that tacking was available to the defendant.

Accordingly, I respectfully dissent.