# ADELE EBERHARDT *v.* IMPERIAL CONSTRUCTION SERVICES, LLC
## (AC 27380)

Flynn, C. J., and McLachlan and Peters, Js.

Argued March 21—officially released June 19, 2007

*Barry T. Pontolillo*, for the appellant (defendant).

*Vincent T. McManus, Jr.*, for the appellee (plaintiff).

*Opinion*

PETERS, J. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 614 n.13, 887 A.2d 872 (2006); General Statutes § 52-575.[1] The dispositive issue in this appeal is whether, as the trial court found, the claimant satisfied her burden of proving, by clear and positive proof, that she had occupied the property at issue under a claim of right. Because we are persuaded that the court's finding was not clearly erroneous, we affirm the judgment in favor of the claimant.

In an amended one count complaint filed February 16, 2005, the plaintiff, Adele Eberhardt, sought a judgment declaring that she was the owner of three parcels of adjoining property in a Meriden subdivision that abutted land to which she had acquired title in 1966.[2] The defendant, Imperial Construction Services, LLC, denied the allegations in the complaint and filed a special defense in which it alleged that the plaintiff had used the disputed property in accordance with an oral license agreement, recently withdrawn, that had been granted to her by the defendant's predecessor in title. After a court trial, the court found that, by clear and positive

---

[1] General Statutes § 52-575 (a) provides in relevant part: "No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues or within fifteen years next after such person or persons have been ousted from possession of such land or tenements . . . ."

[2] Although she did not allege it as a distinct count, the plaintiff claimed at trial that the defendant had promised a conveyance of additional property at some future time subsequent to her initial purchase of her lot. The court found against the plaintiff on this claim. Because neither party has challenged this part of the court's decision, we decline to review it further.

proof, the plaintiff had proven the elements of adverse possession with respect to one of the parcels in dispute[3] and rendered judgment accordingly. The defendant has appealed.

In its careful and extensive memorandum of decision, the trial court made the following largely undisputed findings of fact. On or about July 27, 1966, the plaintiff and her husband, Harry Eberhardt, contracted with Joseph Carabetta, a principal in Carabetta Brothers, Inc., for the construction of a house at Country View Heights in Meriden. Country View Heights was a subdivision owned by Meadow Haven, Inc. (Meadow Haven), a Connecticut corporation. Carabetta was the treasurer and chief executive officer of Meadow Haven and, at all times relevant to this case, was acting on behalf of Meadow Haven.

Although the plaintiff allegedly complained about the shape of the lot that she had acquired from Meadow Haven, Carabetta denied that there was any conversation about adding any property to the northeast side of lot 7 that she had purchased.[4] The deed conveyed only lot 7 to the plaintiff.

Six years later, in 1972, Meadow Haven obtained approval for a resubdivision map known as Country View Heights Section II. The southwest boundary of one of the new lots, designated lot H.O. #23, is the entire northeast boundary of lot 7 purchased by the plaintiff in 1966.

In early 1972, at the request of the plaintiff's husband, a substantial chain-link fence, approximately 800 feet

[3] The trial court's holding with respect to two other parcels, denominated parcels B and D, has not been appealed. We, therefore, consider only the parties' rights with respect to parcel C.

[4] The property to the northeast of the plaintiff's lot was owned at that time by Carabetta's brother, Donald Logodicio. By 1972, this property had been acquired by Meadow Haven.

long and five feet high, was installed by Carabetta's brother, who also was connected to Meadow Haven. This fence enclosed not only the entire backyard of the plaintiff's lot but also enclosed the parcel, now denominated parcel C, that is a substantial portion of the adjacent lot, lot H.O. #23. Parcel C is the property that the plaintiff claims to have acquired by adverse possession.

The installation of the fence made the area, comprised of the plaintiff's backyard and parcel C, inaccessible except through the gate that was located in the fence near the plaintiff's garage. Thereafter the plaintiff utilized and maintained parcel C in connection with the use of her backyard as would any property owner with a large backyard, particularly one where the rear portion was wooded, as was parcel C. The plaintiff extended her lawn approximately thirty feet onto parcel C, built a gazebo, planted flowers and shrubs, constructed a dog kennel with a cement floor, dug a 230 foot deep well in 1988, landscaped the area along the fence with rhododendron bushes and pine trees and regularly picked up fallen trees and other debris within parcel C. Since 1972, when the fence was installed, and continuing to the present, the plaintiff and her husband have had sole possession and use of parcel C to the exclusion of all others.

In early 2001, as a result of Meadow Haven's bankruptcy, lot H.O. #23 was acquired by 23 Shaker Court, LLC (Shaker Court). A representative of Shaker Court placed survey stakes along the common boundary between that lot and the plaintiff's property. After the plaintiff noticed the survey stakes, her attorney wrote to inform Shaker Court that it was trespassing.

Thereafter, the defendant, having purchased H.O. #23 from Shaker Court, wrote a letter to the plaintiff on August 14, 2002, to inform her of its ownership of the

property. The letter asked the plaintiff to remove the fence that had been placed on the property "under a license agreement with a former owner, Meadow Haven, Inc." The plaintiff responded by filing the present declaratory judgment action.

At trial, although the defendant disputed whether the plaintiff had been in continuous, uninterrupted, open and notorious possession of parcel C for more than fifteen years, it principally relied on its special defense, namely, its claim that the plaintiff's possession was not "under a claim of right" because Carabetta had put up the fence to be "neighborly." According to the defendant, in order to accommodate the plaintiff's request for a play area and a dog run, Carabetta had granted her an oral license to use the lot. Such an oral license is revocable and, according to the defendant, was withdrawn by its August 14, 2002 letter. In further support of its special defense, the defendant noted that record title to parcel C had continued uninterrupted during the period of the plaintiff's possession, that the plaintiff had never given anyone notice of her claimed right to parcel C and that neither the plaintiff nor her husband had ever paid any real property taxes on parcel C.

The court ruled against the defendant's special defense because of testimony by Carabetta about the circumstances under which the fence was built. Carabetta testified that, until the property was surveyed by his own surveyor in 2001, Meadow Haven was unaware of where the plaintiff's fence had been located in 1972. Although the fence had been intended to have been placed on the boundary between the plaintiff's lot 7 and the abutting land owned by Meadow Haven, it inadvertently had been wrongly located to include parcel C. As the court expressly found, this testimony, which it found credible, entirely destroyed the factual predicate for the defendant's claim that the location of the

fence resulted from Carabetta's grant of an oral license to the plaintiff.

In its appeal, the defendant does not challenge the sufficiency of the evidence to support this crucial finding by the court with regard to its special defense. It argues, instead, that it was clearly erroneous for the court to find that the plaintiff had satisfied her own affirmative burden of establishing, by clear and convincing proof, that her possession of parcel C was under a claim of right. In the defendant's view, the plaintiff was required to document "open, visible or hostile acts" on her own part, or that of her husband, "to actively exclude" the defendant or its predecessors in title from parcel C. We are not persuaded.

A finding of "[a]dverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted; citations omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989). The burden of proof is on the party claiming adverse possession. *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 844, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). Despite that exacting standard, our scope of review is limited. "Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally

or logically necessarily inconsistent with that conclusion." (Internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito,* supra, 43.

As the trial court accurately observed, "[a] 'claim of right' does not necessarily mean that the adverse possessor claims that it is the proper titleholder, but that it has the intent to disregard the true owner's right to possession. *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 378, 44 A.2d 702 (1945); *Mentz* v. *Greenwich,* 118 Conn. 137, 146, 171 A. 10 (1934)." We note that the defendant did not ask the court to articulate the manner in which the evidence produced by the plaintiff in this case demonstrated that she had the requisite intent. See Practice Book § 66-5.

Relying on our holding in *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.,* supra, 69 Conn. App. 843, the defendant argues that the plaintiff could not prove "a claim of right" without producing some evidence to establish when she conducted herself so as to manifest her intent to dispossess Meadow Haven from parcel C. In the defendant's view, the plaintiff had to demonstrate that she or her husband had taken overt steps "to actively exclude" the defendant or its predecessors in title from this parcel. In *Top of the Town, LLC,* however, the claimant's possession of the disputed property originally had taken the form of a license so that the claimant was required to establish when and how its occupation of the property had been "converted" to a claim of right. Id., 845. The fact that, in this case, the court found that the plaintiff *never* occupied parcel C pursuant to a license means that *Top of the Town, LLC,* is not controlling.

The defendant also relies on *Rudder* v. *Mamanasco Lake Park Assn., Inc.,* 93 Conn. App. 759, 783–85, 890 A.2d 645 (2006), for the proposition that the plaintiff failed to prove an unequivocal intent to dispossess the

defendant from parcel C. In *Rudder*, this court affirmed the trial court's finding that the plaintiff in that case had not proven the elements of adverse possession because the plaintiff's possession was not unequivocal. Id. The defendant argues that the factual similarities between *Rudder* and the present case require us to reverse the court's finding of adverse possession. Even if we were to accept the defendant's contention that the facts in *Rudder* are analogous to the present case,[5] we fail to see how this court's affirmance of factual findings in *Rudder* would require us to decide, in this case, that the court's findings were clearly erroneous. To the contrary, we are reminded that adverse possession is a finding of fact by which we are bound if the finding is supported by sufficient evidence. Id., 779.

The court's findings establish, and the defendant does not dispute, that the significant improvements that the plaintiff made on parcel C were visible to anyone who cared to look. The limited access to parcel C, which required entry near the plaintiff's garage, supports the court's finding that the plaintiff occupied parcel C to the exclusion of all others. In every visible respect, therefore, the plaintiff manifested her unequivocal intent "to use the property as her own and without the consent of the owner." *1525 Highland Associates, LLC* v. *Fohl*, 62 Conn. App. 612, 622, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001). We agree

---

[5] We note several factual differences between the claimed possession of land in *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, supra, 93 Conn. App. 759, and the possession of parcel C in the present case.

We first note that the plaintiff in *Rudder* did not enclose its property, to the exclusion of all others, with a fence. Id., 785. In this case, the court specifically found that the plaintiff's fence completely enclosed her backyard and that the only method of entrance was through a gate near her garage. We also deem it noteworthy that the court in *Rudder* found that the plaintiff had used the parcel at issue with permission; id., 783; which is in stark contrast with the court's finding in this case that the plaintiff had not used the property pursuant to an oral license and therefore without permission.

with the trial court that no greater showing was required.

Consequently, in light of the totality of the record and the findings in this case, especially the court's finding that Carabetta credibly testified about the circumstances surrounding the erection of the fence encompassing parcel C, we conclude that it was not clearly erroneous for the court to find that "[t]he plaintiff has proven by clear and positive proof all of the elements of adverse possession with respect to parcel C, as it is described on Exhibit 2, a boundary survey of the property of the plaintiff, Adele G. Eberhardt, at 100 Sandy Lane, Meriden, Connecticut, prepared by Jeffrey A. Sanborn, L.S. on May 16, 2001."

The defendant's argument to the contrary is unavailing.

The judgment is affirmed.

In this opinion the other judges concurred.