ANGELA H. SCHLICHTING *v.* NICHOLAS
COTTER ET AL.
(AC 28745)

Harper, Beach and Hennessy, Js.

Argued March 28—officially released July 29, 2008

*Gerald L. Garlick*, with whom, on the brief, was *Katherine E. Abel*, for the appellants (defendants).

*Richard A. Smith*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendants, Nicholas Cotter, Marjorie Cotter and Sound Federal Savings,[1] appeal from the judgment of the trial court determining that the plaintiff, Angela H. Schlichting, had gained title to a portion of the Cotters' real property through adverse possession and granting a permanent injunction in favor of the plaintiff. The defendants claim that the court improperly (1) determined that the plaintiff had acquired title to the disputed parcel through adverse possession and (2) granted injunctive relief in the plaintiff's favor. We affirm in part and reverse in part the judgment of the trial court.

---

[1] Sound Federal Savings is the mortgage holder on the Cotters' property.

The court made the following findings of fact in its memorandum of decision. The plaintiff and her husband, Walter Schlichting, purchased the real property located at 102 Holmes Road in Ridgefield in 1979.[2] At the time of the purchase, the adjacent lot, 100 Holmes Road, was owned by Fethon Nitsos and Dorothy Nitsos. The Schlichtings and the Nitsoses believed that the middle of a wooded area that divided the two lots constituted the boundary line between the lots.[3] The legal boundary line, however, actually ran through the lawn between the wooded area and the Schlichtings' home and, thus, was located closer to the Schlichtings' home than the two couples had assumed. The area between the believed boundary line and the legal boundary line (disputed parcel) constitutes the property the plaintiff eventually sought to acquire by adverse possession.

Over the course of the next twenty-five years, the Schlichtings conducted various activities consistent with the residential nature of the area on the disputed parcel. The Nitsoses, by contrast, did not conduct any activities on the disputed parcel, and, in the event they wanted to enter that parcel, asked the Schlichtings' permission.

In September, 2005, the Nitsoses conveyed their interest in 100 Holmes Road to the Cotters by way of warranty deed. In March, 2006, the Cotters, after having surveyed the property, installed a fence along the legal

---

[2] In 1993, the plaintiff's husband conveyed his interest in that property to her.

[3] Specifically, the court found that the Nitsoses and Schlichtings believed that the boundary line ran from an underground utility box at the front of the wooded area to a large rock at the rear. Although the defendants claimed during oral argument that this finding was not supported by the evidence adduced at trial, they have failed to brief this claim, and, accordingly, we decline to afford it review. See *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 93 n.2, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

boundary line and destroyed gardens, ornamental flowers, ground cover and a stone wall located on the disputed parcel. These acts resulted in the plaintiff's filing an action sounding in adverse possession, seeking to quiet title in the plaintiff, and malicious erection of a structure in violation of General Statutes § 52-570. After a trial to the court, the court issued a memorandum of decision and rendered judgment in favor of the plaintiff on her claim of adverse possession and in favor of the defendants on the claim of malicious erection of a structure. The defendants filed a motion to reargue, contending that the court had failed to consider their argument that the plaintiff had failed to prove that her use of the disputed parcel was under claim of right, an essential element of adverse possession. The motion sought that the court "revise its [memorandum of decision] so that judgment shall enter for the [d]efendants on all counts of the [p]laintiff's [c]omplaint." The court granted the defendants' request for reargument and, after hearing argument, denied the relief sought. This appeal followed.

I

The defendants first claim that the court improperly determined that the plaintiff had acquired title to the disputed parcel through adverse possession. In support of this claim, the defendants argue that the court improperly concluded that the plaintiff established that she had used the disputed parcel (1) under claim of right and (2) in an open and visible manner. We will address each argument in turn.

As a preliminary matter, however, we will identify the applicable legal principles and standard of review. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right

with the intent to use the property as his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Eberhardt* v. *Imperial Construction Services, LLC*, 101 Conn. App. 762, 763, 923 A.2d 785, cert. denied, 284 Conn. 904, 931 A.2d 263 (2007); General Statutes § 52-575.

Furthermore, "[a] finding of [a]dverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession." (Citation omitted; internal quotation marks omitted.) *Eberhardt* v. *Imperial Construction Services, LLC*, supra, 101 Conn. App. 767.

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Internal quotation marks omitted.) Id., 767–68.

A

The defendants first argue that court improperly concluded that the plaintiff had used the disputed parcel under claim of right. We decline to review this argument.

The court, in its memorandum of decision, inadequately addressed the element of claim of right.

Although the court did provide a terse legal analysis of what we interpret to be the element of claim of right,[4] as well as a lengthy legal analysis of the related element of hostility,[5] the court made no factual findings with respect to either of these elements. Furthermore, the defendants neglected to file a motion for an articulation so as to elicit such findings. In order to review the defendants' claim, we would be forced to engage in mere guesswork as to the factual grounds on which the court determined that the element of claim of right had been satisfied. Such is not our role as an appellate court. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely

---

[4] It is well settled that "[a] claim of right does not necessarily mean that the adverse possessor claims that it is the proper titleholder, but that it has the intent to disregard the true owner's right to possession." (Internal quotation marks omitted). *Eberhardt* v. *Imperial Construction Services, LLC*, supra, 101 Conn. App. 768. Further, "[i]f any [claimant] during the period in question recognized the [owner's] ownership of the land, in words or by [its] conduct, the [claimant] cannot claim that [its] possession was adverse to the [owner]." (Internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 843, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002).

The following paragraph from the court's memorandum of decision, while not specifically mentioning claim of right, closely resembles a claim of right discussion: "To render possession adverse, it was not necessary as it should be with the wrongful intent to disseise the true owner or accompanied with a denial of his title or with a claim of title in the person entering, and that where a person enters into a possession of land as his own, taking the rents and profits for himself and managing it as an owner manages his own property, the possession is adverse and is a disseisin. The very act itself has to be an assertion of his own title and, thus, equivalent to a denial of the title of all others, and it does not matter that he was mistaken and if he had been better informed he would not have entered upon the land. This has since been adhered to as the law in this state and still has our approval."

[5] The element of hostility is a related, although broader element than claim of right. See, e.g., 3 Am. Jur. 2d 183, Adverse Possession § 118 (2002) ("the term 'claim of right' means no more than the term 'hostile;' and if possession is hostile, it is under a claim of right").

speculative." (Internal quotation marks omitted.) *Newtown Pool Construction, LLC* v. *Errico*, 103 Conn. App. 566, 570–71, 930 A.2d 50 (2007); see also *Moasser* v. *Becker*, 107 Conn. App. 130, 138, 946 A.2d 230 (2008) ("the failure of a litigant to file a motion for articulation upon a court's failure to rule upon a claim vitiates appellate review of their claim"). Accordingly, we decline to review the defendants' claim.

B

The defendants next argue that court improperly concluded that the plaintiff had used the disputed parcel in an open and visible manner. We disagree.

The court, in its memorandum of decision, concluded as follows: "With respect to the open and visible ouster[6] of the [Cotters], there seems to be no evidence that contradicts [the testimony of] Mrs. Nitsos concerning the action between 1979 and 2006. . . . Use by the plaintiff [of the disputed parcel] in an open and visible possession consisted of spraying, pruning and removal of trees, planting and maintenance of pachysandra, German ferns, berry bushes, rhododendron, removal of poison ivy from the trees and the removal of sumac from the foliage in the area, utilization of gypsy moth traps and spraying . . . the dumping, blowing and raking of leaves, the mowing and fertilizing and maintenance of the lawn area, the planting, cultivating and maintenance of the garden, and the paving, plowing, sealing and use of the driveway from 1979 to 2006 to the exclusion of others was open and notorious and put the Nitsoses on notice that the property area was being occupied by the Schlichtings."

---

[6] The court's memorandum of decision is replete with instances, such as that quoted in the body of this opinion, in which the court unnecessarily conflates its analysis of distinct adverse possession elements. Although we find this practice to be confusing, the court's conflation of the elements of "ouster" and "open and visible" does not detract from its overall finding that the plaintiff used the disputed parcel in an open and visible manner.

The defendants rely on the following passage from *Robinson* v. *Myers*, 156 Conn. 510, 244 A.2d 385 (1968), to contend that the court misapplied the element of open and visible use: "The requirement that an adverse possession be notorious . . . is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice." (Citation omitted; internal quotation marks omitted.) Id., 518. The defendants argue that "[i]n light of the agreement between the [Schlichtings and the Nitsoses] as to the use of the disputed [parcel], the use by the plaintiff certainly would not have given notice to [the Nitsoses] that the plaintiff was actually claiming title to the property." The defendants' reliance on *Robinson* is misplaced, as the defendants, in relying on this short passage, have misconstrued the element of open and visible possession.

The legal significance of the open and visible element is not, as the defendants contend, an inquiry as to whether a record owner subjectively possessed an understanding that a claimant was attempting to claim the owner's property as his own. Rather, the open and visible element requires a fact finder to examine the extent and visibility of the claimant's use of the record owner's property so as to determine whether a reasonable owner would believe that the claimant was using that property as his or her own. See 2 C.J.S. 482, Adverse Possession § 53 (2003) ("The purpose of the 'open,' 'visible,' and 'notorious' requirements . . . is to provide the true owner with adequate notice that a trespass is occurring, and that the owner's property rights are in jeopardy. Hence, a claimant will fail to satisfy these requirements unless the possession and use were sufficiently apparent to put the true owner on notice that the claimant was making an adverse claim of ownership."); 3 Am. Jur. 2d 139, Adverse Possession § 63

(2002) ("the words 'open and notorious possession' . . . mean that an adverse claim of ownership must be evidenced by such conduct as is sufficient to put a person of ordinary prudence on notice of the fact that the land in question is held by the claimant as his or her own").[7]

The present case, as the court aptly observed, involves two relatively small, adjacent residential lots, with the plaintiff consistently using the full extent of the disputed parcel in a manner consistent with its residential nature. The defendants have not challenged these factual findings but, rather, have argued that the Nitsoses could not have been put on notice of the plaintiff's use because the Nitsoses had given permission to the plaintiff to use the disputed parcel. Such an argument is simply irrelevant to the analysis of the element of open and visible use. Accordingly, the defendants have not convinced us that it was clear error for the court to have found that the plaintiff's use of the disputed parcel was open and visible.

II

The defendants next claim that the court improperly granted a permanent injunction in favor of the plaintiff. The defendants advance three arguments in support of their claim:[8] (1) it was improper for the court to have granted the equitable remedy of injunctive relief

---

[7] We further note that *Robinson* is factually distinguishable from the present case. *Robinson* involved two adjacent multiacre, rural, wooded tracts of land. *Robinson* v. *Myers*, supra, 156 Conn. 511, 516. It suffices to observe that unlike the situation in the present case, the only relevant use of the disputed parcel by the claimant in *Robinson* was occasional walking and hunting, and an isolated removal of dilapidated automobiles from the disputed wooded area. Id., 516. The *Robinson* court concluded that such "sporadic trespasses" could not amount to open and notorious possession, as such trespasses had not provided "notice to an owner that a claim contrary to his ownership is being asserted . . . ." Id., 518.

[8] Although the defendants listed five separately numbered arguments in their appellate brief, essentially they advanced only three distinct arguments.

because there existed an adequate remedy at law; (2) the plaintiff's complaint failed to allege facts warranting injunctive relief; and (3) it was inequitable for the court to have granted injunctive relief, given that the Cotters were, at the time they performed work on the disputed parcel, the record owners of that property. As we conclude that the plaintiff failed to meet her burden of proving that no adequate remedy at law existed, we need not address the defendants' other arguments.

The following additional facts are relevant to our review. The court, in its judgment, issued a permanent injunction in accordance with the plaintiff's prayer for relief, ordering the Cotters "to remove their fence and piles of stone and to replace the ground cover and flowering bushes and shrubs and wall that they have destroyed within sixty (60) days of this decision." The defendants contend that because there existed an adequate remedy at law, in the form of money damages, it was improper for the court to have granted the equitable remedy of a permanent injunction.

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Citations omitted; internal quotation marks omitted.) *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995).

We conclude that the plaintiff has not met her burden of proving the lack of an adequate remedy at law. Upon our careful review of the record, it is clear to us that the plaintiff produced no evidence to the court that

would have supported an alternate conclusion. We therefore conclude that the court abused its discretion in granting permanent injunctive relief.[9]

The judgment is reversed only as to the granting of injunctive relief and the case is remanded with direction to render judgment denying such relief.

In this opinion the other judges concurred.

---

[9] We further note that we see no reason why the plaintiff could not have obtained money damages for the injuries caused to the disputed parcel, had she presented and proved an appropriate claim to the court. See, e.g., 22 Am. Jur. 2d 238, Damages § 255 (2003) ("[o]ne whose interest in realty has been injured by the tortious act or omission of another is entitled to those damages which will compensate him or her for the injury sustained"). Specifically, in Connecticut, "[d]amage to real estate is measured by the diminution in value to the plaintiff's property caused by the tortious acts of the defendant. Diminution in value may be determined by the cost of repairs, so long as the cost does not exceed the former value of the property and the repairs do not enhance the value higher than it was prior to the damage." 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 26:04, p. 26-6. Given the injuries complained of by the plaintiff, such a valuation method certainly could have been employed so as to determine an amount of money damages that she may have been awarded.